UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DANIELA HERNANDEZ,                                          :
                                        Plaintiff,          :
                                                            :      14 Civ. 4069 (LGS)
            -against-                                       :
                                                            :      OPINION AND ORDER
PFIP, LLC, et al.,                                          :
                                        Defendants.         :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/01/2015

LORNA G. SCHOFIELD, District Judge:

    Plaintiff Daniela Hernandez brings this action against Defendants 2480 Grand Concourse Fitness Group, LLC and PFNY, LLC (the "PFNY Defendants") and Ricardo Cordero ("Cordero") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII"); the New York State Human Rights Law (the "NYSHRL"); and the New York City Human Rights Law (the "NYCHRL").  Plaintiff alleges discrimination on the basis of her sex and gender, resulting in sexual assault, sexual harassment, retaliation and constructive discharge by Defendants.  Defendants move for partial summary judgment.  For the reasons discussed below, the Defendants' motions are GRANTED in part and DENIED in part.

### I. BACKGROUND

#### A. Facts

    The following facts are drawn from the parties' submissions in connection with the instant motions.  For purposes of this motion the facts are construed, as required, in the matter most favorable to Plaintiff, the non-moving party.  *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

    Plaintiff Daniela Hernandez worked full-time as a front desk clerk at Planet Fitness's 2480 Grand location for almost four months from July 5, 2013 to October 28, 2013.  Defendant PFNY, LLC is a franchisor of Planet Fitness clubs in the United States.  The franchisee for one of

these clubs is Defendant 2480 Grand Concourse Fitness Group, LLC, located in the Bronx. Defendant Cordero was the General Manager at this club in 2013, was Plaintiff's supervisor and helped hire Plaintiff.

On her first day of employment, Plaintiff received a copy of the Planet Fitness employee handbook which contained information on Planet Fitness's polices, including those on sexual harassment and employee cell phone use.  The anti-harassment policy prohibited any unwelcome or offensive sexual conduct or behavior.  The handbook directed any employee who believed they were the object of harassment to promptly report the matter to their manager or call the Employee Hotline.  Planet Fitness also maintained a "zero tolerance" policy against using cell phones on the gym floor or at the front desk while on shift.  Violation of the policy could result in immediate termination.  In early August 2013, the alleged sexual harassment began.  In the first alleged incident, Cordero called Plaintiff to the front desk from his upstairs workspace and asked her to come upstairs.  He walked into the maintenance area where the cleaning supplies were kept, and asked Plaintiff to join him.  Plaintiff refused and went back downstairs to work.

In the second alleged incident, on around August 6, 2013, Cordero called Plaintiff in on her day off for a staff meeting with other employees.  After the meeting, Cordero asked Plaintiff to remain in his workspace, which she did.  He then pulled his penis out from his pants and requested that she masturbate him.  She complied.  According to Plaintiff, she resisted but Cordero told her in response to "keep quiet, don't forget, you can easily be replaced."  Plaintiff did not scream or yell during the encounter, and she did not tell anyone about it.

The third alleged incident occurred in early September 2013, when Plaintiff performed oral sex on Cordero in his office after another staff meeting.  Plaintiff testified that he "asked me to give him a blow job," and she "told him I didn't want to do it."  Cordero stood in front of her

and she "ended up doing it because I felt like I didn't have a choice."  Before she walked out he said, "don't forget; don't say anything to anybody; you can easily be replaced."  Plaintiff did not tell anyone about the incident.

The fourth alleged incident occurred around October 8, 2013, when Cordero called Plaintiff in again on her day off for a staff meeting.  He asked her to remain in his workspace afterwards.  He then asked her to pull her pants down and bend over; he unzipped his pants and placed a condom on his penis; and they had vaginal intercourse.  According to Plaintiff, after she left, she cried because he "took advantage" of her.  "[H]e was constantly reminding me that if I said anything that I would lose my job . . . I needed the job to make money to survive, to put food in my mouth, to pay my foster mom so she would let me stay there, and I felt like . . . from the very first incident . . . every time something happened and I didn't complain about it or say anything about it, he took it to a different level."  Plaintiff did not tell anyone about the sexual encounter because, according to her testimony, "he said to me, that I could easily be replaced; I would lose my job."

Plaintiff also alleges that during the course of her employment, Cordero pressed his penis against her backside in front of customers at the front desk on "between 50 and a hundred" occasions.  Plaintiff testified that during these incidents he would grab her hair, bang into her, and make lewd and derogatory comments.  Plaintiff did not mention any of these incidents to anyone.

Plaintiff testified that a few days after the last incident, Cordero tried to give her a hug and she "brushed it off" because she "felt disgusted after the [last] incident, so he kind of, like, fell back a little bit . . . like, slowed down."  After the October 8 incident, no more alleged sexual harassment incidents occurred.

3

On October 27, 2013, Cordero issued Plaintiff a written warning that charged her with being "on phone during her shift, causing conversations with members and staff" and for only "conducting 2 to 3 checks throughout her entire shift" on October 25 and 27, 2013. At the time, Plaintiff told Cordero, "I know what you are doing, and the reason why you are trying to get me to sign this writeup is because you want something to back you up for when you fire me." At least two people who worked at the front desk had been fired for using cell phones at work while Cordero was manager.

The parties dispute whether Plaintiff actually had used her phone at work just prior to the warning, and whether Plaintiff admitted to Cordero that she had used her phone to call her mother. Cordero asserts that he received a complaint from a staff member that Plaintiff was going in and out of the backroom where she reportedly was having a heated conversation that could be overheard. Cordero reviewed video footage showing this movement. Plaintiff testified that she never took her phone out when she went in the backroom; rather, she was "taking shirts out of boxes to fold them when it wasn't busy . . . [t]hat's what we mainly would go back there for." Defendants have not produced any video footage to Plaintiff.

After receiving the written warning, Plaintiff realized she felt "drained from everything that was going on" and that she "didn't want to work there because of what was happening." She called the regional manager of human resources but did not reach him.

At work the next day, on October 28, 2013, Plaintiff told Cordero and another co-worker, "I'm quitting right now because [Cordero] has been sexually harassing me since I started." Cordero told her that she was taking this too far; she responded, "but you have been sexually harassing me since day one."

4

The following day, after verbally quitting her job, Plaintiff spoke with PFNY's New York franchise Human Resources Director, and explained that she had been sexually harassed by Cordero, specifically that she "had sex with Ricardo Cordero to keep [her] job." An investigation was commenced immediately. After Cordero admitted to having sex with Plaintiff, he was fired for "gross misconduct."

### B. The Scope of this Motion

Plaintiff commenced this action in June 2014. The Complaint asserts nine causes of action: gender discrimination under Title VII, the NYSHRL and the NYCHRL (Counts I, III and VI); retaliation under the same federal, state and local laws (Counts II, V and VII); aiding and abetting discrimination under the NYSHRL (Count IV); employer liability for discriminatory conduct under the NYCHRL (Count IX); and interference with protected rights under the NYCHRL (Count VIII). The Complaint does not make clear which claims are against which Defendants. The only claims at issue on this motion are the retaliation and aiding and abetting claims, as explained below.

At a court conference on March 5, 2015, Defendants agreed not to seek summary judgment on the NYCHRL discrimination claim (Count VI) in light of its more lenient standard as compared with its federal and state counterparts. "[I]nterpretations of state and federal civil rights statutes can serve only as a '*floor* below which the City's Human Rights Law cannot fall.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir. 2013) (quoting Local Civil Rights Restoration Act of 2005 § 1, N.Y.C. Local L. No. 85). In contrast with its federal and state counterparts, under the NYCHRL harassment need not be "severe and pervasive" to be actionable, and the employer may be liable for a hostile work environment claim even in the absence of a tangible employment action. *See Williams v. N.Y.C. Hous. Auth.*, 872

N.Y.S.2d 27, 38 (1st Dep't 2009) (holding that "'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability"). In addition, the federal and state discrimination claims are subject to the *Faragher / Ellerth* affirmative defense, which bars the Title VII and NYSHRL discrimination claims in this case because Plaintiff did not avail herself of preventive or corrective opportunities that the PFNY Defendants provided.[1] In contrast, under the NYCHRL, the employer is strictly liable for discriminatory acts of employees; NYCHRL § 8-107(13), and the *Faragher / Ellerth* affirmative defense does not apply. *See Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 475 (2010) (on a certified question from the Second Circuit, answering that the *Faragher / Ellerth* affirmative defense to employer liability does not apply to sexual harassment and retaliation claims under NYCHRL § 8-107). Accordingly, Defendants agreed not to challenge the NHCYRL discrimination claim or PFNY Defendants' vicarious liability under the NYCHRL (Count IX). Given the survival of the

---

[1] *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013) ("[I]f no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.") (citing *Faragher v. Boca Raton,* 524 U.S. 775, 807 (1998), and *Burlington Indus., Inc. v. Ellerth,*524 U.S. 742, 765 (1998)). Plaintiff argues, citing *Leopold v. Baccarat, Inc.*, 239 F.3d 243 (2d Cir. 2001), that she did not "unreasonably fail" to take advantage of PFNY Defendants' preventive or corrective opportunities because she had a "credible fear" that Cordero would fire her for complaining. However, the Second Circuit in *Leopold* explained that "[a] credible fear must be based on more than the employee's subjective belief. Evidence must be produced to the effect that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints." *Id.* at 246. Here, PFNY Defendants satisfied their initial burden of proving that Plaintiff failed to avail herself of the internal complaint procedures, and Plaintiff did not put forward any evidence that the PFNY Defendants ignored or resisted similar complaints or took adverse actions against employees in response to such complaints. Thus, PFNY Defendants "may rely upon the absence or inadequacy of such a justification in carrying its ultimate burden of persuasion" that Plaintiff acted unreasonably in failing to avail herself of the internal complaint procedures. *Id.*

NYCHRL discrimination claim, Plaintiff acceded to entry of an order on consent dismissing the federal and state discrimination claims (Counts I and III).[2]

Defendants agreed at the Conference that Plaintiff did not have a discrete act discrimination claim. PFNY Defendants nevertheless seek summary judgment on a discrete act claim under the NYCHRL. That aspect of the motion is denied. Plaintiff does not assert such a claim in her Complaint and confirms in her opposition motion that she is not arguing it. Her discrimination claim is based on sexual harassment, which is a form of gender discrimination. *See Williams*, 872 N.Y.S.2d at 37 (holding that NYCHRL sexual harassment claims are based on the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender).

PFNY Defendants also state that they are moving on Plaintiff's interference claim (Count VIII), but they provide no relevant briefing. They therefore are deemed to have abandoned this portion of the motion. *Cf.*, *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned.").

What remains are the PFNY Defendants' motion for summary judgment on the retaliation claims under Title VII, the NYSHRL, and the NYCHRL (Counts II, V and VII), in which Defendant Cordero joins; and Cordero's motion for summary judgment on the aiding and abetting claim against him under the NYSHRL (Count IV).

---

[2] Plaintiff now seeks to renege on her agreement to dismiss the federal and state discrimination claims. To the extent they are not dismissed on consent, they are dismissed on account of the *Ellerth / Faragher* affirmative defense to employer liability as discussed in the prior footnote.

## II. Discussion

### A. Summary Judgment Legal Standard

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the Court shows that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Tolbert*, 790 F.3d at 434. "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). "In determining whether summary judgment is appropriate, [the court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert*, 790 F.3d at 434. Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Retaliation

Defendants' motion to dismiss the NYCHRL retaliation claim is denied. The retaliation claims under Title VII and the NYSHRL are dismissed without prejudice to renewal.

#### 1. Retaliation Legal Standard

On a motion for summary judgment, retaliation claims under Title VII and the NYSHRL are analyzed according to the *McDonnell Douglas* burden-shifting analysis. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (applying *McDonnell Douglas* burden analysis for Title VII claim); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (applying McDonnell Douglas analysis to employment discrimination claims under NYSHRL). "Under [the

8

*McDonnell Douglas*] framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation by offering evidence that she participated in a protected activity, suffered an adverse employment action, and that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Ya-Chen Chen*, 805 F.3d at 70 (internal quotation marks and citation omitted).  "This showing creates a presumption of retaliation, which the defendant may rebut by articulating a legitimate, non-retaliatory reason for the adverse employment action." *Id*. (internal quotation marks and citation omitted).  If the defendant provides such an explanation, the presumption of retaliation dissipates and Plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action." *Id*. (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013).

The NYCHRL offers broader protection.  It prohibits "retaliat[ion] or discriminat[ion] in any manner against any person because [she] has . . . opposed any practice forbidden" as discriminatory under the NYCHRL.  N.Y.C. Admin. Code § 8–107(7).  "The retaliation or discrimination . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment . . . [but] must be reasonably likely to deter a person from engaging in protected activity." *Id*.  A motion for summary judgment on an NYCHRL retaliation claim, like its state and federal counterparts, is analyzed under a burden shifting framework.  The plaintiff must first establish a prima facie case, which the defendant may rebut by showing "legitimate reasons for its actions." *Ya-Chen Chen,* 805 F.3d at 75-76 (citing *Bennett v. Health Mgmt. Sys.*, 936 N.Y.S.2d 112, 124 (1st Dep't 2011)).  Plaintiff may then defeat the motion by showing that a reasonable jury could conclude "either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole

basis for taking action, and that its conduct was based at least in part on discrimination." *Id.* at 76 (internal quotations and citations omitted).

### 2. Application of Law to Facts

Plaintiff alleges two theories of retaliation. She asserts that her resisting Cordero's sexual advances resulted in two forms of retaliation -- (1) his forcing her to have sex with him and (2) Cordero's issuing her a written warning for using her cell phone.[3]

Regardless of whether Plaintiff asserts her retaliation claim under Title VII, state or city law, her first theory of liability cannot survive summary judgment. Plaintiff alleges that in mid-September, Cordero forced her to have oral sex with him after she told him she "did not want to do it." Cordero forced her to have sex *in spite of*, and not *because of*, her resisting him. Plaintiff cannot make out a prima facie case of retaliation because she cannot show causation -- that Cordero forced her to have sex because she resisted. Non-consensual sex forced on an employee by a supervisor in the workplace is actionable as discrimination, not retaliation.

Plaintiff's second basis for a retaliation claim survives summary judgment on the NYCHRL claim. Plaintiff alleges that she rebuffed Cordero when he tried to hug her shortly after they had had sexual relations for the last time in early October, and that he retaliated about two weeks later by issuing her a written warning for using her cell phone. The first element of Plaintiff's prima facie case is that she "opposed any practice forbidden as discriminatory under

---

[3] In her opposition to summary judgment, Plaintiff argues constructive discharge -- that "she was forced to quit due to the sexual harassment." That argument does not state an additional basis for her retaliation claim, as her argument is not that she was forced to quit because she rebuffed Cordero. Instead she testified in substance that she quit because she could no longer bear to have sex with Cordero in order to keep her job. The reason for her resignation as she described it is relevant to her discrimination claim and to her damages, but not to Cordero's liability for retaliation.

the NYCHRL." Although it is unclear whether rejecting a harasser's advances can constitute protected activity under Title VII or the NYSHRL, doing so can be a basis for a retaliation claim under the NYCHRL. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 115 & n.12 (2d Cir. 2013) (A jury could reasonably find that [plaintiff] had also opposed [defendant's] discriminatory conduct by rejecting his advances . . . and telling him that his actions were offensive and shameful; . . . [but w]e offer no opinion on whether merely rejecting a sexual advance is cognizable under the federal or state counterparts to the NYCHRL.).

The second element of Plaintiff's prima facie case is that "the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." § 8–107(7). Plaintiff was given a disciplinary warning for telephone use, which under company policy was a terminable offense, and two people previously had been terminated for cell phone use. On these facts, Plaintiff has made a prima facie case showing that Cordero's warning was "reasonably likely to deter a person from engaging in protected activity." "'[N]o challenged conduct may be deemed nonretaliatory' [under the NYCHRL] unless 'a jury could not reasonably conclude from the evidence that such conduct was . . . 'reasonably likely to deter a person from engaging in protected activity.' This 'assessment [should] be made with a keen sense of workplace realities, of the fact that the 'chilling effect' of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct.'" *Mihalik*, 715 F.3d 102 at 112 (quoting *Williams*, 872 N.Y.S.2d at 34).

At the second step of burden shifting analysis, Cordero may rebut Plaintiff's prima facie case by showing "legitimate reasons for his actions." *Ya-Chen Chen*, 805 F.3d at 75-76. Cordero asserts that Plaintiff used her cell phone at work, contrary to the company's zero tolerance policy, and that she admitted she had used her phone to call her mother. He maintains that she was

11

shown on video going in and out of the backroom where she made a call, and that another employee complained that she was involved in a heated telephone conversation which members had overheard.  This explanation for the warning is sufficient for the burden to shift back to Plaintiff.

At the third step of the burden shifting analysis, the evidence -- or lack of it -- in this case is sufficient for a reasonable jury to conclude "either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination."  *Id*. at 76 (internal quotations and citations omitted).  Regarding pretext, Defendants have not submitted testimony from the complaining employee or the referenced video tape.  Only Cordero's self-serving testimony of what he saw on video and what another employee heard supports the assertion that Plaintiff used her phone at work.  On this basis, a jury could reject his testimony of Plaintiff's reported phone use and find that the reason for issuing the warning was pretextual.

Regarding a possible retaliatory motive, the timing of the warning -- after Plaintiff rebuffed his hug and ceased having sexual relations with him -- provides a basis from which a reasonable jury could conclude that, if Plaintiff used her cell phone at work, that fact was not the sole reason for Cordero's issuing the written warning when he did.  *See Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (proof of causation may be shown "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct").  For these reasons, Plaintiff's NYCHRL retaliation claim survives the summary judgment motion on the merits.

All Defendants are potentially liable on the NYCHRL retaliation claim.  Defendant

Cordero faces direct liability under § 8-107(7), which prohibits retaliation by "any person engaged in any activity to which this chapter applies . . . ." Cordero is such a person under § 8-107(1)(a), which prohibits, inter alia, gender discrimination by employees. PFNY Defendants face strict, vicarious liability for Cordero's retaliation under § 8-107(13): "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee . . . which is in violation of any provision of this section other than [§ 8-107(1) or (2)]." Accordingly, Defendants' motions for summary judgment on the NYCHL retaliation claim are denied.

Because Plaintiff is entitled to no more damages if she proceeds only on the NYCHRL retaliation claim than if she pursues the identical claim under federal and state law, the analysis in this Opinion is confined to the NYCHRL. The Title VII and NYSHRL retaliation claims are dismissed without prejudice to renewal in the event Plaintiff identifies some additional recovery or benefit to which she would be entitled under those claims but not the NYCHRL.

### C. Aiding & Abetting

Cordero moves for summary judgment on Plaintiff's claim of aiding and abetting liability under the NYSHRL. As discussed, the discrimination and retaliation NYSHRL discrimination claims are dismissed. "An aiding and abetting claim against an individual employee depends on employer liability, however, and where no violation of the Human Rights Law by another party has been established, individuals cannot be held liable for aiding and abetting their own violations of the Human Rights Law." *Miloscia v. B.R. Guest Holdings LLC*, 928 N.Y.S.2d 905, 917 (Sup. Ct., N.Y. County 2011) (quotation marks and citations omitted), *aff'd in part, modified on other grounds in part*, 942 N.Y.S.2d (1st Dep't 2012); *accord Conklin v. County of Suffolk,* 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012) ("as the employee's liability [under NYSHRL] necessarily hinges on that of the employer, the employer must be held liable for an individual to also be held liable .

. . ."). Cordero's motion for summary judgment on the NYSHRL aiding and abetting claim is therefore granted, with prejudice as to the discrimination claim, and without prejudice to renewal as to the retaliation claim in the event that NYSHRL retaliation claim is revived.

### D. Supplemental Jurisdiction

Having dismissed both Title VII claims, i.e. all of the federal claims in this case, I choose to exercise supplemental jurisdiction over the surviving NYCHRL claims, because all discovery and motion practice have been completed and all that remains is trial.

District courts may decline to exercise supplemental jurisdiction over the claims arising under New York City law if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This decision is "purely discretionary." *Oneida Indian Nation v. Madison Cty.*, 665 F.3d 408, 437 (2d Cir. 2011) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). In considering whether to exercise this discretion, courts must weigh considerations of "[judicial] economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). Although these factors will usually lead to dismissal of the state law claims when the federal claims have been dismissed at a relatively early stage, a court may properly retain supplemental jurisdiction when all that remains is trial. *See Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir. 1990) (affirming exercise of supplemental jurisdiction after discovery had been completed, the court had adjudicated three dispositive motions and the case was ready for trial).

### III. Conclusion

For the reasons discussed above, the discrimination claims under Title VII and the NYSHRL (Counts I and III) are dismissed on consent. The retaliation claims under Title VII and the NYSHRL (Counts II and V) are dismissed without prejudice as provided above. Defendant

Cordero's motion for summary judgment on the NYSHRL aiding and abetting claim (Count IV) is granted, with prejudice as to the discrimination claim, and without prejudice to renewal as to the retaliation claim as provided above. Defendants' motion for summary judgment on the NYCHRL retaliation claim (Count VII) is denied. The case will proceed against all Defendants on the NYCHRL discrimination and retaliation claims.

The Clerk of Court is directed to close the motions at Docket Nos. 69 and 72. A separate order scheduling dates for trial will follow.

SO ORDERED.

Dated: December 1, 2015
   New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**